**UNITED STATES of America, Plaintiff,**

v.

**Nathan APPLE, Defendant.**

No. 2:95 CR 83.

United States District Court, N.D. Indiana, Hammond Division.

May 15, 1996.

Patrick D. Hansen, Asst. U.S. Atty., U.S. Attorneys Office, Dyer, IN, for plaintiff.

Nick J. Thiros, Cohen and Thiros, Merrill-ville, IN, for defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on the Motion to Dismiss filed by Defendant, Nathan Apple, on October 27, 1995. For the reasons set forth below, this motion is **DENIED.**

### BACKGROUND

Defendant, Nathan Apple, is charged with bribing an employee of the Indiana Department of Environmental Management ("IDEM"). The indictment states as follows: From February 4, 1991, through September 13, 1995, IDEM investigated property of A.S.K. Shredders, Inc. for possible violations of state civil and criminal statutes. The investigation focused at least in part on A.S.K.'s storage and disposal of tires.

As president of A.S.K., Apple met several times with IDEM agents, who informed him of the possible violations. As part of the IDEM investigation, IDEM's commissioner issued an order in May 1995 demanding a clean-up of A.S.K.'s property and fining Apple $10,000. In July 1995, Apple "knowingly, intentionally, and corruptly [gave] money to

a person employed by IDEM, with the intent to influence or reward this person as an agent for IDEM in connection with a matter involving $5000 or more." (Indictment ¶ 5)

*DISCUSSION*

■ The Government does not face a particularly demanding standard in opposing a motion to dismiss an indictment. Generally, an indictment is sufficient as long as it does an adequate job of (1) alleging the elements of the charged offense, (2) apprising the defendant of the charges he or she will meet, and (3) enabling the defendant to raise any judgment under the indictment as a bar to future prosecution for the same offense. *United States v. Ocampo,* 890 F.2d 1363, 1373 (7th Cir.1989).

■ For the most part, a motion to dismiss an indictment is not a vehicle for resolving whether the prosecution can ultimately prove its case. *United States v. Yasak,* 884 F.2d 996, 1001 (7th Cir.1989); *United States v. Mongelli,* 794 F.Supp. 529, 530 (S.D.N.Y. 1992). Put another way, a motion to dismiss an indictment is more akin to a civil Rule 12(b)(6) motion than to a civil summary judgment motion. Here, Apple's arguments might require the Government to produce more detailed facts and evidence than it must at this stage, as the arguments seem to lie in the borderland between a face-of-the-indictment attack and a mini-trial. In any event, because the parties have willingly addressed the arguments, to the extent that is proper and possible the Court will do the same. *See Mongelli,* 794 F.Supp. at 530.

■ The provision that the indictment charges Apple with having violated is 18 U.S.C. section 666. Although the indictment does not specify a subsection of 666, the content of the indictment and the arguments of the parties reveal that Apple is charged with bribing a state official in violation of 666(a)(2). Focusing on the statutory language most relevant here, the elements of a section 666(a)(2) violation are roughly as follows:

(1) The defendant corruptly gave something of value to any person; (2) with intent to influence a state governmental agency that received more than $10,000 in federal funds in any year; (3) in connection with any business or transaction of the agency; (4) that involved anything of value of $5,000 or more.

18 U.S.C. § 666(a)(2); *United States v. Bonito,* 57 F.3d 167, 174 (2d Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 713, 133 L.Ed.2d 667 (1996). The fundamental purpose of the bribery statute is preserving "the integrity of" federal funds that support state government activities. *Bonito,* 57 F.3d at 172; *United States v. Cicco,* 938 F.2d 441, 444–45 (3d Cir.1991); *Mongelli,* 794 F.Supp. at 530; *United States v. Little,* 687 F.Supp. 1042, 1049 (N.D.Miss.1988).

Apple first argues that the indictment should be dismissed because it "does not allege facts showing how the federal funds were adversely affected by his allegedly criminal conduct." (Mot. ¶ 3) However, under *Ocampo,* the Government need not load the indictment with language detailing the facts of the alleged crime.

■ Still, Apple extends this argument a bit further into the Government's actual evidence and theory, and the Government seems to have come along for the ride. Apple contends that because his alleged bribe did not cause IDEM to lose any money or any other item of value, the bribe does not fall within the scope of section 666(a)(2). He stresses that since the Government's evidence suggests that he bribed an IDEM agent for the purpose of avoiding *criminal* fines, rather than civil fines imposed by IDEM, no IDEM funds would have been compromised by the alleged bribe. According to Apple, by the time he allegedly bribed the IDEM agent, IDEM had already fined him and was essentially done with him. The only measure left, and the one that Apple was trying to avoid, was a separate, full-blown criminal prosecution conducted by the prosecutor's office and not IDEM. Apple says that whether his bribe succeeded in stopping the criminal prosecution or not, the bribe would not have affected IDEM funds, meaning his offense is not covered by section 666(a)(2).

The Government stresses that the criminal charges Apple was facing could have cost

*Apple* well over $5,000 in criminal fines. The Government also identifies IDEM as the requisite state agency that received over $10,000 in federal funds as required by element (2) above. What the Government has not said, however, is that Apple would have paid his criminal fines *to IDEM*.

Taken most literally, Apple's argument has no support in the statute or relevant cases. Nothing in the plain language of section 666(a)(2) says that the agency must suffer a pecuniary loss. Apple cites no case, and the Court has identified none, that says in so many words that the agency must suffer a pecuniary loss.

However, some decisions, including a very recent Second Circuit decision, have perhaps addressed Apple's argument from a different perspective. *See United States v. Foley*, 73 F.3d 484 (2d Cir.1996); *United States v. Vona*, 842 F.Supp. 1534 (W.D.N.Y.1994); *Mongelli*, 794 F.Supp. at 530. As noted, the statute requires that the agency "business" that was "connect[ed]" to the bribe "involved anything of value of $5,000 or more." 18 U.S.C. § 666(a)(2). From the perspective of these decisions, the issue becomes whether the Government can convict Apple for seeking to avoid fines that he would have paid not to IDEM, but to someone else. Put another way, the issue is whether the Government need show that Apple's bribe involved something of value to *IDEM*—or whether, instead, the Government can convict by showing merely that the bribe involved something of value to *Apple*. *See Foley*, 73 F.3d at 488; *Vona*, 842 F.Supp. at 1536; *Mongelli*, 794 F.Supp. at 530; *see also Bonito*, 57 F.3d at 172; *United States v. Coyne*, 4 F.3d 100, 111 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 929, 127 L.Ed.2d 221 (1994).

At least until the Second Circuit's *Foley* decision, cases interpreting the phrase "involving anything of value of $5,000 or more" had mapped out a fairly broad interpretation of that facially broad language. In short, these cases suggest that in addition to tangible items like physical government property, the "thing of value" that must be "involved" in the agency business can include both intangible benefits to defendants and ultimate drains on the resources of the agency. *See,*

*e.g., Bonito*, 57 F.3d at 172, 174 (determining that a bribe intended to influence a seven-figure real estate deal satisfied elements (3) and (4) set out above); *Coyne*, 4 F.3d at 111 (characterizing an undocumented interest-free loan from an architect to a county planning official as "something of value" although not specifying to whom); *Vona*, 842 F.Supp. at 1536–37; *Mongelli*, 794 F.Supp. at 530–31. More specific to Apple's argument, these cases also suggest that the thing-of-value element does not require that the defendant's bribe directly deprive the state agency of $5,000 in cash or property or otherwise directly affect agency funds. *See id.*

The first case to tackle the "of value to whom" question was *Mongelli*. The *Mongelli* defendants bribed officials to obtain business licenses. 794 F.Supp. at 529–30. In seeking dismissal of an indictment, the defendants argued that the licenses they obtained through the bribes were not worth $5,000 to the agency that issued them. *Id.* at 530. The *Mongelli* court had a different perspective:

> [T]he plain meaning of the statute ... does not refer to pecuniary loss to the agency. Section 666 does not require that the $5,000 "involved" be measured in terms of value *to the agency:* this would hardly constitute a reasonable criterion where the agency is engaged, not in buying or selling services, but allowing or not allowing activities to be carried on which have substantial financial value to licensees. One can hardly be heard to claim, for example, that a license to dump large amounts of waste is a valueless item.

*Id.* The *Mongelli* court continued by observing that since the licenses gave their holders the right to engage in a potentially profitable business activity, they held intrinsic market value that might have exceeded $5,000. *Id.* at 531. For the court, such intrinsic value to the defendants and others meant that the defendants' bribes involved a "thing of value" per the statute. *See id.* at 530–31.

After *Mongelli*, another New York district court interpreted section 666(a)(2) similarly. In *Vona*, the defendant owed a water bill and bribed an official to reduce the bill. 842 F.Supp. at 1535–36. In ruling on the thing-

of-value element, the *Vona* court reasoned that section 666(a)(2) "does not require either the gain to the defendant or the loss to the victim to be $5,000 or more. To the contrary, as long as the overall transaction or target of the bribe is valued at $5,000 or more, the [thing-of-value] element is satisfied." *Id.* at 1536.

If *Mongelli* and *Vona* were controlling, Apple's argument would fail. The criminal fines that Apple allegedly sought to avoid with his bribe could represent a "thing" that held "value" for him: avoiding a substantial expense could represent value as can gaining a substantial amount of cash or piece of property. Likewise, the apparent target of Apple's bribe—avoiding fines that might total over $5,000—could have held a value of over $5,000.

The *Mongelli* and *Vona* district courts, however, are governed by the Second Circuit, which in *Foley* perhaps took a contrary position. The *Foley* defendant was a state legislator who took[1] a bribe from persons representing a bank that wanted the legislator to delay implementation of an unfavorable law. 73 F.3d at 486. The legislator did so, and at trial, the prosecution offered only proof of the value of the delay to the bank—the prosecution did not show that the delay had any value to the state, which was the requisite government recipient of $10,000 in federal funds. *Id.* at 486–87, 488, 492–93.

Without mentioning *Mongelli* or *Vona*, the *Foley* court concluded that this showing of value to the bank alone did not support a conviction. *Id.* at 492–93. In a detailed analysis, the court first observed that section 666 "is silent as to the identity of the person or entity to whom the '[ ]thing' must have at least a $5,000 value." *Id.* at 489 (alteration in *Foley* ). In light of this silence, the court turned to legislative history. It noted that Congress intended section 666 to "increase the protection of the integrity of federal funds disbursed through federal programs." *Id.* Specifically, section 666 was designed to fill gaps left by existing bribery statutes, which covered only bribes to federal officials and to agencies funded by two federal job

training acts. In contrast to these existing statutes, section 666 would reach bribes made to many more officials of the myriad of state agencies and other entities that receive more than $10,000 of annual federal funds. *Id.* at 489–90. In sum, section 666 was meant to "augment the ability of the United States to vindicate significant acts of ... bribery involving Federal monies that are disbursed to private organizations or State and local governments." *Id.* at 489 (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 369 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3510). The *Foley* court saw the legislative history as indicating that "the assessment of the thing's value must be connected, even if only indirectly, to the integrity of federal program funds." 73 F.3d at 490.

The *Foley* court then turned to cases interpreting section 666. It began by noting, as have other courts, that the element that the agency received more than $10,000 in federal funds does not require the prosecution to "trace the federal funds received by [the agency] to the project in connection with which its employee received a bribe." *Id.; accord United States v. Westmoreland*, 841 F.2d 572, 574–78 (5th Cir.), *cert. denied*, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 39 (1988). The court then reviewed its own prior decisions, drawing from them the proposition that when a bribed agent spends agency money as a result of the bribe, "the government is not required to trace the agent's corrupt expenditures to the federal program funds." *Foley*, 73 F.3d at 492. But, the court added, "we have held that there was no violation ... where the preservation of federal funds was not implicated by the defendant's conduct; and we have expressed doubt as to whether [the section 666 provision prohibiting bribe-taking] would be applicable where the conduct at issue affects neither the federal program funds received by [an agency] nor the receiving [agency's] financial interests." *Id.*

Finally, the *Foley* court applied the foregoing to the facts before it. Given that the prosecution had offered no proof that delaying the legislation "had any financial value to

---

1. Section 666 criminalizes bribe taking with statutory language substantially similar to that which criminalizes bribe giving. *See* 18 U.S.C. § 666(a)(1)(B).

the State" nor that the delay "had any connection whatever with a federal program," the court concluded that the delay "affected neither the financial interests of the protected organization nor federal funds directly." *Id.* at 493. As such, the bribe "was not shown in some way to touch upon federal funds," meaning that the prosecution "failed to prove that [the legislator] was guilty of an offense" under section 666. *Id.*[2]

Judge Lumbard wrote a strong dissent. He asserted that the majority's ruling misread both the plain language of section 666 and the legislative history. 73 F.3d at 494–95.

According to Judge Lumbard, section 666's broad, unqualified reference to "anything of value of $5,000 or more" simply does not support the conclusion that the thing involved must be "worth $5,000 *to the government,* " i.e., the state agency that receives the federal funds. *Id.* at 495 (emphasis added). He interpreted the legislative history to evidence no more than Congress' broad purpose of protecting the integrity of federal funds, a purpose that "does not require that section 666 only reach bribes worth $5,000 to the federal fund recipient." *Id.* Judge Lumbard expressed his belief that protecting the integrity of federal funds means "assuring the integrity of the ... agencies that receive them." *Id.* (quoting *Westmoreland,* 841 F.2d at 578). He found the legislative history "[a]t best ... unclear," meaning it therefore did not constrict the statute's broad language. 73 F.3d at 495.

In sum, Judge Lumbard found it "sufficient that [the legislator] was an agent of a government that received $10,000 in federal funds and that he took a bribe involving something worth at least $5,000." *Id.* Judge Lombard closed by noting that both *Mongelli* and *Vona* previously rejected the very proposition the *Foley* majority embraced.

The *Foley* opinions, *Mongelli,* and *Vona* perhaps illustrate attempts to find middle ground between two incorrect extremes. At one extreme lies the already rejected proposition that section 666 requires the prosecution to trace a direct route of funds from the federal treasury, through the state agency, then out of the agency (and perhaps into the hands of the bribe giver). At the other extreme would be the proposition that any bribe of an official of a federally funded agency violates section 666, no matter what the impact or subject of the bribe. These propositions might be labeled the "funds focus" and the "corruption focus" for their respective emphases on showing a direct drain on federal funds on the one hand, and on combating the corrupting, public-trust eroding effects of bribery on the other.

Clearly, the correct interpretation of the thing-of-value element lies between the extremes of the funds focus and the corruption focus. This Court concludes that *Mongelli, Vona,* and the *Foley* dissent embody the better interpretation.

Of course, the starting point for interpretation is the language of the statute itself. *Ardestani v. I.N.S.,* 502 U.S. 129, 134, 112 S.Ct. 515, 519, 116 L.Ed.2d 496 (1991). This Court agrees with the *Foley* dissent that the plain language of section 666 simply does not suggest the conclusion reached by the *Foley* majority. That language, in pertinent part, is as follows: "Whoever ... corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of [an agency that receives $10,000 in federal funds] in connection with any business, transaction, or series of transactions of such ... agency involving anything of value of $5,000 or more" thereby violates section 666. 18 U.S.C. § 666(a) & (b). The broad phrase "involving anything of value" evokes a wide universe of things of value that can reasonably be said to exceed $5,000 from some legitimate perspective. The phrase does not readily suggest that the value must be to the agency, nor that the agency itself must have directly lost something valuable. Before *Foley,* the Second Circuit itself per-

**2.** This Court notes a minor factual distinction between *Foley* and the case at bar. In *Foley,* the prosecution offered proof of the value of the bribe to an entity that was neither a federally subsidized agency nor the defendant. Here, the Government was argued that it can prove value to Apple, the Defendant. This factual distinction, however, does not alter the *Foley* majority's thrust: that the prosecution must always show value to the agency.

ceived this lack of limitation when it observed that "at least on its face, [section 666] does not say that the thing of value of $5,000 must be that of the affected organization." *Bonito*, 57 F.3d at 172.

Section 666 also covers crimes besides bribery, and the language addressing those other crimes is relevant because it is part of the section as a whole. *Buttitta v. City of Chicago*, 9 F.3d 1198, 1204 (7th Cir.1993). Section 666 prohibits stealing (or embezzling, or obtaining by fraud) agency property valued at $5,000 or more. 18 U.S.C. § 666(a)(1)(A). This provision quite clearly indicates that the stolen property must be owned or controlled by the agency. *See id.* § 666(a)(1)(A)(ii).

One might argue that the clear language of this theft provision should be imported to the bribery provision—that if Congress wanted to be sure that the theft provision covers only theft of agency property, it must likewise have wanted to be sure that the bribery provision covers only bribes that directly deplete agency property. Yet Congress did not write in the bribery provision, "anything belonging to the agency of value of $5,000 or more," although it could have. Rather, Congress left that particular provision less specific. The Court takes that lack of specificity not to be an inadvertent slip-up in otherwise precise drafting, but instead, deliberately broad drafting.

As for legislative history, this Court concludes that it does not provide sufficient fodder for a firm interpretation. The only comments of any relevance offer little more than a broad summation of the statute's broad purpose of "protect[ing] the integrity of" federal funds and the agencies that receive them. 1984 U.S.C.C.A.N. at 3511. The history simply does not answer the question of whether *protecting integrity requires that the value of the thing mentioned in the statute be measured only from the single perspective of the agency, or whether, instead, the web of protection embraces multiple and more flexible perspectives.* This blank slate does not give a strong reason to adopt a restrictive interpretation of section 666 that the express language of the section does not create.

The Court also notes that the *Foley* majority seems to offer principles at odds with each other. The majority began by noting the well-established rule that section 666 does not require the prosecution to trace a path of specific funds from the federal treasury, to the state agency, and then out of the agency (and perhaps into the hands of the bribe giver). 73 F.3d at 490–91. One might propose that this rule boils down to saying that section 666 does not require the prosecution to prove that the bribe directly cost the federal government money. Yet in its holding, the *Foley* majority seems to insist that the prosecution at least trace funds from the state agency's coffers out toward some illegitimate purpose. With this, the majority seems to say, "If you at least show us that the bribe cost the state agency money, then we can rest assured that it likely cost the federal government money, too."

In light of the uncertain ground just surveyed, one might well ask: What, then, is the purpose of requiring that the "value" of the "thing" "involved" in the agency business reach or exceed $5,000? The *Mongelli* court offered an insightful answer: "The $5,000 triggering provision should ... be interpreted as intended to require that substantial matters of that actual value be involved...." 794 F.Supp. at 530. This Court takes that comment to mean that Congress wanted to limit the reach of section 666 to circumstances where, in some way, the bribe involves "real money" and thereby a real threat to the ultimate integrity of appreciable federal funds. The $5,000 value requirement is what keeps the statute from making a federal violator out of the motorist who bribes a federally subsidized police officer with $20 to avoid a $50 traffic ticket. As such, the $5,000 requirement is the finishing touch on the federal funds "hook" that starts with the other requirements that the bribed agency received substantial federal funds and that the bribe be connected to agency business.

This interpretation of the thing-of-value element comports with the insidious way in which bribery can cause harm. By way of contrast, note that the root nature of stealing is taking the property of another, and the

root harm lies in the victim's direct property loss. Bribery, on the other hand, can have less immediate consequences. In subtle ways, a bribe can ultimately lead an official to deplete agency resources by misusing them. Indeed, if anything, the phrases "undue influence by bribery" in the legislative history and the term "corruptly" in the statute evoke this insidious, corrupting aspect of bribery. *See* 18 U.S.C. § 666(a)(2); 1984 U.S.C.C.A.N. at 3511; *United States v. Duvall,* 846 F.2d 966, 972 (5th Cir.1988) (noting that "the distinguishing characteristic of a bribe or kickback is not that it damages the public because it causes the giver to demand a higher price from the government but because it subverts a government official's loyalty and judgment").

To illustrate, if an employee steals cash from an agency's office safe, the loss immediately shows up on the financial books of the agency. In contrast, if an employee is destined to award a $10,000 contract to someone, and chooses to award it to an unqualified crony who gives a bribe, that loss may not show up on the financial books until the crony misperforms the contract, if ever. Yet most would agree that in the case of the contract the agency nonetheless suffered a substantial loss in that the bribe influenced its decision-making in a substantial matter.

Indeed, as the *Mongelli* court suggested, all state agencies are perhaps vulnerable to being bribed, but not all agencies are prone to directly losing their own money or property to the bribe. Often, an agency is primarily "engaged not in buying or selling goods or services, but in allowing or not allowing activities to be carried on which have substantial value to licensees." 794 F.Supp. at 530. Here, the Government has suggested that IDEM's primary business is keeping polluters from conducting activities that are perhaps profitable for them, but harmful to others. Unlike a government contracting office, IDEM simply may not be in the business of handing out government largesse to private beneficiaries. Assuming that IDEM does receive the requisite $10,000 in federal funds, and that Apple tried to prevent being fined more than $5,000 by bribing an IDEM official investigating pollution, should we con-

clude that this bribe of IDEM just does not fall under section 666? This Court thinks not.

Finally, this Court's interpretation of the thing-of-value element may not, after all, clash entirely with the *Foley* majority's interpretation. As noted, the *Foley* majority required that "the assessment of the thing's value must be connected, even if only indirectly, to the integrity of the federal program funds." 73 F.3d at 490. The Government has suggested that it may be able to show here that Apple's bribing an IDEM official to avoid $5,000 in fines was at least indirectly connected to the integrity of federal funds.

The Court has covered considerable ground in this analysis. To enhance clarity and minimize overreading of dicta by the parties, the Court will now state its precise ruling in this order: The Court concludes that section 666(a)(2) does not require the Government to show that the "thing" that held value of over $5,000 held that value for IDEM; all else being equal, showing that the "thing" held value for Apple can suffice.

Moreover, the Government has suggested that it may be able to show that Apple's bribe did cost IDEM over $5,000 or otherwise held value for IDEM. All else being equal, such a showing can suffice as well. *See Bonito,* 57 F.3d at 172–73 (assuming that showing value for the agency satisfies section 666); *Mongelli,* 794 F.Supp. at 530 (same).

■ As his next argument, Apple may or may not be saying that because the Government alleges he offered a bribe of less than $5,000, the thing-of-value element is not met. In any event, cases have uniformly rejected this argument. *See Little,* 687 F.Supp. at 1049–50 (collecting cases). This Court does the same.

■ Apple's final argument is that his alleged bribe was not connected to IDEM "business" as required by element (3) above. He asserts that since IDEM's civil investigation of him was essentially finished by the time he allegedly bribed the IDEM investigator, the investigator, who was then pursuing possible criminal charges, was no longer on IDEM business. As noted, the Government has identified IDEM, not the prosecu-

tor's office, as the agency that received $10,-000 in federal funds.

The Government responds by asserting that IDEM employs several full-time criminal investigators, one of whom was the person Apple bribed. Assuming the truth of the Government's assertion, at this point and on a motion to dismiss an indictment the Court cannot rule out the possibility that the investigator was on IDEM business when Apple allegedly bribed him. *See Bonito,* 57 F.3d at 172 (offering a broad dictionary definition of the term "business").[3]

### CONCLUSION

For the foregoing reasons, the Motion to Dismiss is **DENIED**.

---

**3.** The Court notes that section 666 has been amended since its enactment; however, the amendments were technical and do not affect this ruling. *See Foley,* 73 F.3d at 489 (noting "technical" amendments).