# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 99-2798

————————

United States of America,       \*
            \*
          Appellee,       \*
            \*   Appeal from the United States
       v.               \*   District Court for the Western
            \*   District of Missouri.
Mark A. Morgan,         \*
            \*
          Appellant.      \*

————————

Submitted:  September 12, 2000

Filed:  October 24, 2000

————————

Before RICHARD S. ARNOLD, FAGG, and BYE, Circuit Judges.

————————

FAGG, Circuit Judge.

Mark A. Morgan, a real estate developer, and two codefendants were charged with participating in two schemes to bribe a Kansas City, Missouri councilman to influence the councilman's votes on two local ordinances. In a superseding indictment, the Government charged Morgan with two counts of conspiracy to violate 18 U.S.C. § 666, which prohibits the solicitation or payment of bribes to agents of state or local governments in connection with any government "business, transaction, or series of transactions" valued at $5000 or more if the government "receives, in any one year period, benefits in excess of $10,000 under a Federal program." The indictment also

contained seven substantive counts of bribery in violation of § 666. The Government alleged the councilman was an agent of the City of Kansas City, the City was a local government, and the City "received federal benefits of over $10,000 under Federal programs." Morgan filed a motion to dismiss the indictment because it did not allege his conduct had any connection with the expenditure of federal funds or posed any threat to the integrity and proper operation of a federal program. The district court denied the motion, and Morgan pleaded guilty to two counts of conspiracy to violate § 666. In the plea agreement, Morgan agreed not to appeal. In exchange, the Government dropped the seven bribery counts. After Morgan's plea, the Supreme Court confirmed the language of § 666(a)(1)(B) does not require the Government to prove the bribe affected federal funds. See Salinas v. United States, 522 U.S. 52, 61 (1997). The Court also held the statute's application to the defendant did not extend federal power beyond its proper bounds. See id. at 60-61. Because the bribe threatened the integrity and proper operation of the federal program, the statute was constitutional as applied to the facts of the case. See id. at 61.

Morgan later filed this 28 U.S.C. § 2255 motion to vacate his conviction and sentence asserting § 666 was unconstitutional as applied in his case because "[t]he government neither alleged nor proved that the conduct for which [he] was indicted, convicted, and sentenced had any connection with the expenditure of federal funds or posed any threat to the integrity and proper operation of a federal program." See Salinas, 522 U.S. at 60-61; United States v. Santopietro, 166 F.3d 88, 93 (2d Cir. 1999) (Salinas may be read as requiring a threat to a federal program's integrity and proper operation to assure § 666 is not unconstitutionally applied); United States v. Zwick, 199 F.3d 672, 687 (3d Cir. 1999) (§ 666 requires government to prove federal interest is implicated by defendant's offense conduct); United States v. Phillips, No. 98-30968, 2000 WL 973261, at *5 (5th Cir. July 13, 2000) (§ 666 does not reach misconduct of local officials whose actions do not threaten the integrity of federal funds or programs); but see United States v. Dakota, 188 F.3d 663, 668 (6th Cir. 1999). The Government responded that Kansas City's receipt of at least $10,000 in federal benefits

-2-

provided the necessary federal connection. The district court denied Morgan's motion without holding a hearing. In the district court's view, Morgan's claim was procedurally barred because he did not raise it on appeal, and he did not qualify for the actual innocence exception to procedural bar because his claim was one of legal, rather than factual, error. The district court also rejected Morgan's motion on the merits, holding the necessary federal connection was supplied by the city's receipt of at least $10,000 in one year. Morgan appealed, and we certified two questions for our review: (1) whether 18 U.S.C. § 666 can be constitutionally applied to punish acts of local bribery that did not threaten the integrity of federal benefits received by the City or the City's administration of any federal program, and (2) whether Morgan's claim that his conduct was beyond the power of the federal government to proscribe is a claim of "actual innocence" he is entitled to raise for the first time on collateral review. "Appellate review is limited to the issues specified in the certificate of appealability." DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000).

Because Morgan has procedurally defaulted his claim by failing to raise it on direct review, he can raise the claim in collateral proceedings only if he first shows either cause and actual prejudice or actual innocence. See Bousley v. United States, 523 U.S. 614, 622 (1998). To establish actual innocence, Morgan must show "'it is more likely than not that no reasonable juror would have convicted him.'" Id. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)).

Morgan argues he is actually innocent because his conduct was beyond the power of the federal government to proscribe. Relying on Salinas and later circuit cases, Morgan contends § 666 cannot be constitutionally applied unless the Government proves a federal interest is implicated by his offense conduct, and the record does not support a finding of that federal connection in his case. Given the constitutional constraints on the statute's reach, Morgan says, a violation of § 666, as that statute is properly construed, never occurred. Pointing to Bousley, Morgan asserts his is a classic claim of factual innocence.

We conclude Morgan's is not an actual innocence claim he may raise for the first time on collateral review. In <u>Bousley</u>, a defendant who pleaded guilty to using a firearm in connection with a drug trafficking crime before the Supreme Court clarified the use requirement in <u>Bailey v. United States</u>, 516 U.S. 137 (1995), sought to attack his guilty plea on collateral review. Although the petitioner had made no direct appeal claiming his guilty plea was unintelligent because the district court misinformed him about the elements of the offense, the Supreme Court allowed the petitioner a chance to show his actual innocence and thus excuse the default by establishing he had not used the firearm within the meaning of <u>Bailey</u>. Thus, in <u>Bousley</u> and other cases, courts have permitted petitioners collaterally to attack guilty pleas on the basis of intervening decisions modifying the substantive criminal law defining the offense, despite procedural default, if the petitioner makes a showing of actual innocence--that the petitioner did not commit the offense as modified. <u>Cf.</u> <u>Embrey v. Hershberger</u>, 131 F.3d 739, 741 (8th Cir. 1997) (en banc) (pre-<u>Bousley</u> case).

Unlike the situation faced in <u>Bousley</u> after <u>Bailey</u> clarified the meaning of use in § 924(c), there is no definitive announcement in <u>Salinas</u> clarifying the elements of § 666. There is no intervening controlling precedent between the time of Morgan's guilty plea and collateral proceedings that has clearly established Morgan's actions do not constitute a crime and thus that he is actually innocent of the charged offense. Because the Supreme Court in <u>Salinas</u> no more than suggested the requirement Morgan asserts is absent in his case, Morgan cannot show "'it is more likely than not that no reasonable juror would have convicted him.'" <u>Bousley</u>, 523 U.S. at 623. Morgan's actual innocence claim fails, and he cannot overcome the procedural bar.

Even if Morgan could show a "gateway" factual innocence claim, his underlying constitutional claim does not challenge his guilty plea. <u>See</u> <u>id.</u> at 624 (if Bousley shows on remand he did not use a firearm as defined in <u>Bailey</u>, he will be entitled to consideration of defaulted unintelligent plea claim considered on merits); <u>Hohn v. United States</u>, 193 F.3d 921, 922 (8th Cir. 1999). Once the judgment of conviction on

-4-

a guilty plea becomes final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. See United States v. Broce, 488 U.S. 563, 574-75 (1989); see also Dejan v. United States, 208 F.3d 682, 685 (8th Cir. 2000) (defendant who pleaded guilty was required to show guilty plea was constitutionally infirm to obtain habeas relief). To be voluntary, the plea must be knowingly and intelligently made. A plea is not "intelligent" unless the defendant first receives "real notice of the true nature of the charge against him," and the defendant, his attorney, and the court correctly understood the essential elements of the crime. See Bousley, 523 U.S. at 618. But Morgan does not assert his guilty plea was unintelligent, or constitutionally infirm in any other way. Moreover,

> [a]s a general rule, "[a] defendant's knowing and intelligent guilty plea forecloses 'independent claims relating to the deprivation of constitutional rights that occurred before the entry of the guilty plea.'" United States v. Vaughan, 13 F.3d 1186, 1187 (8th Cir. 1994) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). There are exceptions to this rule, however; a person may, despite a valid guilty plea, pursue a certain type of claim that has been variously defined as a claim that attacks "the State's power to bring any indictment at all," United States v. Broce, 488 U.S. 563, 575 (1989), that protects a defendant's "right not to be haled into court," Blackledge v. Perry, 417 U.S. 21, 30 (1974), and that "the charge is one which the State may not constitutionally prosecute," Menna v. New York, 423 U.S. 61, 62-63 n.2 (1975) (per curiam). We have often interpreted these Supreme Court cases to foreclose claims that raise "nonjurisdictional" issues and to permit only claims that question the trial court's "jurisdiction."

Weisberg v. State of Minnesota, 29 F.3d 1271, 1279-80 (8th Cir. 1994). A claim that a statute is facially unconstitutional falls within the exception. See Sodders v. Parratt, 693 F.2d 811, 812 (8th Cir. 1982) (holding guilty plea does not foreclose attack on constitutionality of criminal statute under which defendant was charged--defendant claimed statute was vague on its face); United States v. Johnston, 199 F.3d 1015, 1019 n.3 (9th Cir. 1999). No court has applied the exception to a claim, like Morgan's, that

a statute is unconstitutional as applied.  See Johnston, 199 F.3d at 1019 n.3.  Nor does Morgan contend his case falls within the exception.

We conclude the district court properly rejected Morgan's § 2255 motion as procedurally barred.

BYE, Circuit Judge, specially concurring.

I am pleased that the majority opinion explicitly recognizes a facial constitutional challenge exception to the procedural default doctrine.  The facial constitutional challenge exception has deep roots.  See Ex parte Siebold, 100 U.S. 371 (1879) (seminal case); see also United States v. Broce, 488 U.S. 563, 574-76 (1989); Haring v. Prosise, 462 U.S. 306, 319-22 (1983); Menna v. New York, 423 U.S. 61, 62 & n.2 (1975) (per curiam); Blackledge v. Perry, 417 U.S. 21, 29-30 (1974); United States ex rel. Swanson v. Reincke, 344 F.2d 260, 261 (2d Cir. 1965); United States v. Gaertner, 583 F.2d 308, 311 (7th Cir. 1978); Journigan v. Duffy, 552 F.2d 283, 288-89 (9th Cir. 1977); Jellum v. Cupp, 475 F.2d 829, 830 (9th Cir. 1973); Owens v. Wainwright, 698 F.2d 1111, 1114-15 (11th Cir. 1983) (per curiam) (implied holding); cf. United States v. Drew, 200 F.3d 871, 880-83 (D.C. Cir. 2000) (Edwards, C.J., concurring) (acknowledging the Blackledge-Menna line of cases and urging adherence thereto in the District of Columbia Circuit).[1]

---

[1]It's worth noting that this exception is *not* jurisdictional in character, although many courts have erred in this direction.  The Siebold Court described its holding as jurisdictional, see Siebold, 100 U.S. at 377, but that was a judicial stratagem.  When Siebold was decided, Congress permitted federal courts to grant habeas relief only in cases where the sentencing court lacked jurisdiction, hence the Siebold Court had to strong-arm the unconstitutionality peg into the jurisdictional hole.  See generally Withrow v. Williams, 507 U.S. 680, 718-19 (1993) (Scalia, J., concurring and dissenting) (explaining that the late 19th century Court expanded the term *jurisdiction* to encompass *constitutional challenges* as part of a thinly-veiled effort to broaden

Although we had not explicitly applied the exception in a case procedurally similar to Morgan's case, cf. Weisberg v. State of Minnesota, 29 F.3d 1271, 1279-80 (8th Cir. 1994), Sodders v. Parratt, 693 F.2d 811, 812 (8th Cir. 1982) (per curiam), Country v. Parratt, 684 F.2d 588, 589 n.1 (8th Cir. 1982), the exception is a sound one. Surely it offends our system of ordered liberty to permit a prisoner to remain incarcerated when the statute under which he was convicted exceeded Congress' lawmaking power to enact.

Although I join the majority opinion, I write separately (perhaps only for my own benefit) to lament the fact that Morgan may not raise the one claim that has merit. An administrative panel of this court granted Morgan a certificate of appealability (COA) that permitted him to raise *only* an actual innocence challenge to his federal-program bribery conviction, 18 U.S.C. § 666. The administrative panel's decision effectively sounded the death-knell for Morgan's appeal because, without doubt, Morgan is *not* actually innocent of that crime. At his change-of-plea hearing, Morgan pleaded guilty to each of the elements of § 666. Hence Morgan cannot sustain the sole challenge he may raise in this appeal. Cf. DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000) ("[A]ppellate review is limited to the issues specified in the certificate of appealability.").[2]

---

habeas relief — then limited solely to jurisdictional questions — but that the Court abandoned that approach in the 1940s when Congress liberalized federal habeas relief); Stone v. Powell, 428 U.S. 465, 474-78 (1976).

[2]DeRoo and its predecessor cases forbid *prisoners* from raising issues not included within their COAs. We have not held, in my view, that a *hearing panel* is likewise forbidden from expanding the scope of a COA. Although I would have preferred to do precisely that in Morgan's case, restraint counsels a different conclusion. A COA is "law of the case," and it is perhaps best that the eventual hearing panel not reconsider the administrative panel's judgment in establishing the scope of a prisoner's COA.

Morgan does have a meritorious claim. We simply cannot reach that claim because it wasn't included in his COA. His meritorious claim is a facial constitutional challenge to § 666, the very challenge we acknowledge in the majority opinion — a cruel irony.

Section 666 prohibits acts of bribery, theft, and fraud against state and local governments (and certain other organizations) receiving funds under federal assistance programs. See Fischer v. United States, ___ U.S. ___, 120 S. Ct. 1780, 1785 (2000). The statute enacts criminal penalties for those who:

(1)     offer anything with a value of more than $5000;
(2)     to any agent of a state or local government; and
(3)     that government receives more than $10,000 per year in federal funds.

See 18 U.S.C. § 666.

The statute's sweeping language implies that the federal government may prosecute bribers whose activities bear no direct relation to the government's receipt of federal funds. See Salinas v. United States, 522 U.S. 52, 56-57 (1997) (recognizing that the language of § 666 authorizes almost limitless criminal liability because of the "expansive, unqualified language"). In Salinas, a statutory interpretation case, the Supreme Court observed that Congress had enacted a breathtakingly broad criminal statute. But the Court was not asked to probe the constitutionality of § 666. Salinas challenged only the meaning of the words in the statute. See id. at 59-60.[3]

_____

[3]I acknowledge Justice Kennedy's constitutional speculations, see Salinas, 522 U.S. at 60-61, but they are precisely that — speculations. Because federal courts have no obligation to raise constitutional issues sua sponte, I am unable to wrench an implied constitutional holding from Salinas.

Two circuits have recently discussed the constitutionality of § 666, and upheld the law as a valid exercise of Congress's Spending Clause power. See United States v. Santopietro, 166 F.3d 88, 92-94 (2d Cir. 1999); United States v. Zwick, 199 F.3d 672, 687 (3d Cir. 1999). Yet both the Second and Third Circuits were troubled by the sweeping breadth of § 666. Each court determined that § 666 could be saved from constitutional infirmity by reading into the text of the statute an additional "germaneness," or "nexus," requirement.[4] These courts in effect mandate that the quid pro quo *directly impact* funds that are federal in origin.

The approach taken by the Second and Third Circuits is fundamentally flawed for two reasons. First, and most obviously, federal courts are not free to rewrite the federal penal code. The Supreme Court has repeatedly admonished courts not to inject new elements into federal criminal statutes.

> Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language. Only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language. This proposition is not altered simply because application of a statute is challenged on constitutional grounds. Statutes should be construed to avoid constitutional questions, but this interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature.

United States v. Albertini, 472 U.S. 675, 680 (1985) (internal citations omitted and punctuation altered).

Second, even if a "nexus" element could be added in an effort to resuscitate § 666, the result would be wholly ineffectual. To put it bluntly, Congress lacks the

---

[4]The Sixth Circuit has explicitly rejected an additional "nexus" element. See United States v. Dakota, 188 F.3d 663, 668 (6th Cir. 1999).

power under the Spending Clause to enact criminal laws governing third-party conduct. Judicial efforts to render § 666 palatable by adding an element to the crime cannot alter our Constitution's basic limitation on federal legislative power. No amount of creative drafting permits the judiciary to preserve a statute that Congress plainly lacked the power to create.

Congress may not pass laws unless it acts pursuant to an express grant of power or authority in Article I of the Constitution. Section 666 cannot properly be linked to any grant of Congressional power in the Constitution. Hence, Congress exceeded its proper authority in enacting § 666; the law is unconstitutional, void *ab initio*. To explain this conclusion in greater depth requires a brief review of the two Article I provisions upon which Congress might have relied to justify enactment of § 666. See Crawford v. Davis, 109 F.3d 1281, 1283 (8th Cir. 1997) (explaining that Congress need not correctly surmise the source of its authority in order to pass legislation, and may ground its legislative authority in multiple sources).

Every court that has addressed the issue has concluded that Congress adopted § 666 pursuant to its Spending Clause power. See, e.g., United States v. McCormack, 31 F. Supp. 2d 176, 186 n.18 (D. Mass. 1998) (collecting cases); see also Fischer, ___ U.S. ___, 120 S. Ct. at 1793 n.3 (Thomas, J., dissenting). The Spending Clause provides that

> [t]he Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States.

U.S. Const. art. I, § 8, cl. 1.

While Congress may disburse funds under this grant of power, Congress may not make laws. Congress may indirectly regulate state conduct by attaching "strings" to

-10-

grants of money given to state and local governments, see South Dakota v. Dole, 483 U.S. 203, 206-207 (1987), but those strings aren't *laws*.  See generally David E. Engdahl, The Spending Power, 44 Duke L.J. 1, 71 (October 1994) ("What makes [federal funding] conditions obligatory is that essence as contract, wholly apart from the circumstance that they happen to be spelled out in a statute or an agency rule. Although articulated in a statute or rule, they have no force as 'law'; their only force is contractual.  Consequently, they are not among the 'Laws of the United States . . . made in Pursuance' of the Constitution, to which the Supremacy Clause applies.").

Indeed, Congress's Spending Clause power is comprehensible only by analogy to principles of contract law.  See Pennhurst State Sch. & Hosp. v.  Halderman, 451 U.S. 1, 17 (1981) ("[L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.  The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'"); cf. Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 610-11 (8th Cir. 1999) ("Title IX operates to condition an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.  The fact that title IX was enacted pursuant to Congress's spending power is evidence that it prohibits discriminatory acts only by grant recipients.  Several circuits have held that because they are not grant recipients, school officials may not be sued in their individual capacity under Title IX.") (internal punctuation and citations omitted).

In enacting § 666, however, Congress did not contract with states or local governments.  Neither did Congress bestow gifts of funds upon those governments. Rather, Congress passed a federal criminal statute designed to punish conduct that falls within the domain of traditional state concerns (bribery, embezzlement, fraud, etc.). Section 666 reaches beyond punishment of the state and local governments who receive

those funds to proscribe the conduct of third persons who aren't parties to the funding contract. Spending Clause power is not that broad.

The Spending Clause nowhere authorizes Congress to criminally legislate. Thus § 666 floats far from Congress's Spending Clause moorings. See Engdahl, 44 Duke L.J. at 92 ("[Section 666] lack[s] any basis in the Constitution. . . . Congress has no more power to punish theft from the beneficiaries of its largesse than it has to punish theft from anyone else. Federal dominion over federal property is irrelevant, because once any particular funds have been given to a recipient, those funds are not federal property anymore. *The Constitution does not contemplate that federal regulatory power should tag along after federal money like a hungry dog.*") (emphasis added).

No court has suggested that Congress rested its power to enact § 666 on the Commerce Clause. Nor do the House and Senate Reports imply any such intent on the part of Congress. That's not really surprising; section 666 bears little coherent relationship to commerce. The text of § 666 reveals only a strong connection to federal funds. Section 666(b) has been termed a "jurisdictional provision," likely on the theory that if the bribee obtains at least $10,000 in federal funds, then the federal government has an interest in prosecuting. But this $10,000 threshold does nothing to screen out *intra*state bribery. Most intrastate bribery falls outside the ambit of Congress's Commerce Clause power. Thus Congress could not have grounded § 666 on its Commerce Clause power.

Article I contains numerous explicit grants of power to Congress. But none of these powers remotely concerns federal criminal penalties for bribery. I am forced to conclude — albeit with some reluctance — that Congress lacked the power to enact § 666 as a federal crime. My reluctance stems largely from the fact that "[n]o court . . . has ever struck down a federal statute on grounds that it exceeded the Spending Power." Commonwealth of Va. v. Browner, 80 F.3d 869, 881 (4th Cir. 1996). Yet I find that to be an unavoidable conclusion in this instance.

-12-

Section 666 is, I believe, the only federal crime whose supposed constitutional basis is the Spending Clause. That may speak volumes. Congress may well realize the fragile power of the Spending Clause — in particular, the fact that the Clause confers upon Congress no criminal lawmaking power.

Had Morgan been permitted to raise a facial constitutional challenge to his conviction by the administrative panel, I would strike down § 666 as an unconstitutional exercise of Congress's Spending Clause power. Because the administrative panel has placed the matter beyond my grasp, however, I must respectfully concur, despite my deep reservations about the soundness of Morgan's conviction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.