**UNITED STATES of America,
Plaintiff,**

**v.**

**Basim Omar SABRI, Defendant.**

**No. CRIM. NO. 01–246 (RHK/JMM).**

United States District Court,
D. Minnesota.

Jan. 28, 2002.

Michael W. Ward, Assistant United States Attorney, Minneapolis, MN, for Plaintiff.

Andrew S. Birrell and R. Travis Snider, Birrell & Newmark, Ltd., Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

Defendant Basim Omar Sabri is charged in a three-count Indictment[1] with corruptly giving, offering, and agreeing to give things of value to Minneapolis City Councilmember Brian Herron with the intent of rewarding or influencing Herron in connection with various transactions of the City Council and the Minneapolis Community Development Agency ("MCDA"), all in violation of 18 U.S.C. § 666(a)(2). Before the Court is Sabri's Motion to Dismiss the Indictment on the grounds that 18 U.S.C. § 666 is unconstitutional on its face. For the reasons set forth below, the Court will grant the Motion.

## Background

The following facts are alleged in the Indictment. Defendant Sabri is a property developer and landlord in the City of Minneapolis. (Indictment, ¶ 1.d.) During 2001, Sabri was pursuing a real estate development project within the Eighth Ward of the City of Minneapolis which involved a hotel and several commercial retail businesses. (Id.) The project contemplated zoning, eminent domain/condemnation, licensing and funding actions by the City of Minneapolis ("the City"), the MCDA and the Minneapolis Neighborhood Revitalization Program (NRP).[2] (Id.) Through July 17, 2001, Herron was a member of the Minneapolis City Council representing the Eighth Ward.[3] (Id. ¶ 1.e.) His committee assignments included the Ways and Means/ Budget, Public Safety and Regulatory Services, and Health and Human Services committees. (Id.) As a member of the City Council, Herron also served as a member of the Board of Commissioners of the MCDA, overseeing the

---

1.   Sabri has entered pleas of not guilty to each of the counts in the Indictment.

2.   The NRP is an entity formed by the City of Minneapolis and other local governmental entities to provide funding for the economic revitalization of Minneapolis neighborhoods through neighborhood steering committees. The NRP is wholly funded by the MCDA and its affairs are managed by the NRP Policy Board, which includes the Mayor of the City of Minneapolis and members of the Minneapolis City Council. (Indictment ¶ 1.c.)

3.   On July 17, 2001, Herron entered a plea of guilty to one count of Extortion Under Color of Official Right in violation of 18 U.S.C. § 1951. The conduct underlying the charge to which Herron pleaded guilty involved a different transaction and different individuals than are involved in the Indictment here, and nothing in this Memorandum Opinion and Order affects the validity of the charge against Herron or his plea of guilty. See United States v. Vong, 171 F.3d 648, 654 (8th Cir. 1999) (rejecting challenge to constitutionality of 18 U.S.C. § 1951).

actions and budget of that agency.[4] (*Id.*)

Count I of the Indictment alleges that, from July 2 through July 17, 2001, Sabri corruptly sought Herron's assistance in obtaining regulatory approvals from the City of Minneapolis for the above-described commercial real estate development project. (*Id.* ¶ 3.) Sabri allegedly gave or offered Herron $5,000 with the intent to influence or reward him in connection with such transactions. (*Id.*)

Count II of the Indictment alleges that, from July 2 through July 17, 2001, Sabri corruptly sought Herron's attendance at a meeting with private business owners who owned property necessary for Sabri's commercial development project. (*Id.* ¶ 5.) Count II also alleges that Sabri corruptly sought Herron's threat at that meeting to use the City's power of eminent domain to take the business owners' property unless they sold to Sabri. (*Id.*) Sabri allegedly offered or agreed to give Herron $10,000 with the intent of influencing or rewarding Herron for his actions. (*Id.*)

Count III of the Indictment alleges that from July 7 through July 17, 2001, Sabri corruptly sought Herron's assistance in obtaining $800,000 in community economic development grants from the City, the MCDA, and other entities for his commercial real estate development project. (*Id.* ¶ 7.) Sabri allegedly offered or agreed to give Herron $80,000 (a 10% commission) with the intent of influencing or rewarding Herron in connection with his assistance. (*Id.*)

During the one-year period beginning January 1, 2001, the City of Minneapolis was expected to receive (and the City Council was expected to administer) approximately $28.8 million in federal assistance. (*Id.* ¶ 1.a.) During that same one-year period, the MCDA was expected to receive and administer federal assistance in the form of Community Development Block Grants and other federal programs of approximately $23 million. (*Id.* ¶ 1.b.)

## Analysis

As noted above, all three counts of the Indictment charge Sabri with violating 18 U.S.C. § 666(a)(2). That section provides, in relevant part, that if a local government, or any agency thereof, "receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance," *see* 18 U.S.C. § 666(b), then it is a crime against the United States for any person to

> corruptly give[ ], offer[ ], or agree[ ] to give anything of value to any person, with intent to influence or reward an agent of ... a ... local ... government, or any agency thereof, in connection with any business, transaction, or series of transactions of such ... government, or agency involving anything of value of $5,000 or more.

18 U.S.C. § 666(a)(2).

Sabri argues that the federal statute is unconstitutional on its face because it does not require a connection between the alleged criminal conduct—the giving or offering of a bribe—and the federal funds distributed by Congress. Without the requirement of such a connection, Sabri contends, the statute lies outside the scope of Congress's authority to enact laws under the Spending Clause of Article I of the United States Constitution. This Court begins its analysis by construing § 666(a)(2) to determine whether it does

---

4. The MCDA has an Executive Director, appointed by the Mayor of the City of Minneapolis, and is governed by a Board of Commissioners that is composed of the thirteen elected members of the Minneapolis City Council. (Indictment ¶ 1.b.)

or does not require a connection between the bribe and the expenditure of federal funds. If the statute does not require such a connection, the Court will then consider whether Congress validly exercised its legislative authority in enacting § 666(a)(2).

## I. The Essential Elements of Giving, Offering or Agreeing to Give A Bribe in Violation of § 666(a)(2)

In *Salinas v. United States*, 522 U.S. 52, 56–57, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), the United States Supreme Court construed the complementary provision of § 666 which makes it a federal offense for *an agent* of an organization or a state, local, or tribal governmental body or agency that receives more than $10,000 in federal funds in a year *to solicit, demand, accept, or agree to accept* anything of value with the intent to be influenced or rewarded in connection with any business, transaction, or series of transactions of the entity valued at $5000 or more. 18 U.S.C. § 666(a)(1). Given the parallel wording in the provision criminalizing the *taking* of a bribe (18 U.S.C. § 666(a)(1)(B)) and in the provision criminalizing the *giving or offering* of a bribe (18 U.S.C. § 666(a)(2)), this Court first looks to *Salinas* for guidance in construing § 666(a)(2).

Salinas, a deputy sheriff in Hidalgo County, Texas, was responsible for managing the county jail and supervising the custody of prisoners. 522 U.S. at 55, 118 S.Ct. 469. He accepted bribes from a federal prisoner housed at the jail pursuant to an arrangement negotiated between the United States Marshals' Service and the county; in exchange for the bribes, the prisoner was permitted "contact visits" with his wife and a girlfriend. *Id.* Salinas argued to the Supreme Court that, under § 666(a)(1)(B) the government must prove, as an element of the crime of taking a bribe, that "the bribe in some way affected federal funds, for instance by diverting or misappropriating them." *Id.*

In evaluating Salinas' argument, the Supreme Court focused on the clause "[a]ny business, transaction, or series of transactions," which is found both in § 666(a)(1)(B) and in § 666(a)(2). Reasoning that the word "any" means "any," without qualification, and that "[t]he statute applies to *all cases* in which an 'organization, government, or agency' receives [$10,000 or more] of benefits under a federal program," *id.* at 57, 118 S.Ct. 469 (emphasis added) (citing 18 U.S.C. § 666(b)), the Court rejected Salinas' proposed statutory construction. The statute's prohibition against accepting a bribe with the intent of being influenced or rewarded in connection with any business, transaction, or series of transactions "is not confined to a business or transaction that affects federal funds." *Id.* Indeed, the Supreme Court observed that § 666(a)(1)(B)'s language was "expansive" and "*unqualified* ... both as to the bribes forbidden and the entities covered." *Id.* at 56, 118 S.Ct. 469 (emphasis added).

Also rejected was Salinas' contention that the Supreme Court could not construe § 666(a)(1)(B) to apply to bribes having no affect on federal funds without "a plain statement of congressional intent," as required by *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), and *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The Supreme Court distinguished *Gregory* and *McNally* on the grounds that, "[i]n each of those cases, we confronted a statute susceptible of two plausible interpretations, one of which would have altered the existing balance of federal and state power." 522 U.S. at 59, 118 S.Ct. 469. Here, however, "[t]he text of § 666(a)(1)(B) is unambiguous on the point

under consideration here, and *it does not require the Government to prove federal funds were involved in the bribery transaction.*" *Id.* at 60, 118 S.Ct. 469 (emphasis added). Accordingly, the Supreme Court held that "as a matter of statutory construction, § 666(a)(1)(B) does not require the Government to prove the bribe in question had *any particular influence on federal funds.*" *Id.* at 61, 118 S.Ct. 469 (emphasis added).

It appears that Salinas did not ask the Supreme Court to address whether § 666(a), as construed, was a proper exercise of the legislative powers vested in Congress by Article I of the Constitution. The Supreme Court did decide, however, that the statute was constitutional as applied to the facts of the case. In reaching that conclusion, it observed that the "preferential treatment accorded to [a federal prisoner in the county jail] was a threat to the integrity and proper operation of the federal program." *Id.* at 60–61, 118 S.Ct. 469.

While the *Salinas* Court held that § 666(a)(1)(B) did not "require the Government to prove that the bribe in question had any particular influence on federal funds," *id.* at 61, 118 S.Ct. 469, it expressly left open the question of "whether the statute requires some other kind of connection between a bribe and the expenditure of federal funds." *Id.* at 59, 118 S.Ct. 469. After *Salinas*, two federal courts of appeal have concluded that there must be proof of a connection between the bribe and the expenditure of federal funds.[5] This Court evaluates each appellate court decision in turn.

### The Second Circuit Court of Appeals in United States v. Santopietro

In *United States v. Santopietro*, 166 F.3d 88 (2d Cir.1999), the Government appealed from a revised sentence that the district court had imposed on Santopietro after vacating his conviction for crimes charged under § 666. *Santopietro*, 166 F.3d at 90. Santopietro, formerly the Mayor of Waterbury, Connecticut, had been charged with violating § 666(a)(1)(B) by engaging in "a scheme whereby [he] used his political position to influence decisions by various city agencies in return for bank loans and cash payoffs from certain local businessmen." *Id.* at 91. Santopietro used his influence to further the interests of various real estate developers and accepted both rewards for having used his influence and inducements to use his influence. *Id.* During the operation of this scheme, the City of Waterbury received substantial federal funds for housing, urban development and other programs within the purview of the land use board, the water department, the zoning commission, and the fire marshal. *Id.* at 93. "Although large amounts of money flowed to individuals through corrupt means, there was no obvious or direct financial loss to the City of Waterbury itself." *Id.* at 91.

Prior to the Supreme Court's decision in *Salinas*, the Second Circuit had held that "the $5,000 or more required to be involved in the transaction must be worth at least that amount to a recipient of federal funds." *United States v. Foley*, 73 F.3d 484, 492–93 (2d Cir.1996). The *Santopietro* court acknowledged that, in light of *Salinas*,

---

5. By contrast, the United States Court of Appeals for the Sixth Circuit held that § 666 "requires no relationship between the illegal activity and the federal funding." *See United States v. Dakota*, 197 F.3d 821, 826 (6th Cir. 1999). In reaching this conclusion, however, the Sixth Circuit did not engage in any extended analysis of either the statute or the *Salinas* decision.

to whatever extent *Foley* required that the bribe directly affect the disbursement or other use of federal funds, such a construction of the statute must now be discarded. Equally to be cast aside is a construction of the statute that imposes limitations on the "anything-of-value" element, beyond the requirement that the transaction, in connection with which the accepter of corrupt payments intended to be influenced, involves anything of value of $5000 or more. Thus, to the extent that *Foley* required the Government to plead and prove that the transaction involved something of value *to the governmental entity that received the requisite amount of federal funds,* that narrowing construction of the statute must also be discarded.

166 F.3d at 92–93 (emphasis in original).

Evaluating whether Santopietro's conviction under § 666(a)(1) was permissible after the Supreme Court's decision in *Salinas,* the Second Circuit first discussed the *statutory requirements* of the offense: the court of appeals observed that the City of Waterbury had received more than $10,000 in the relevant years and the corrupt transactions had exceeded $5000 in value. It then evaluated a *"requirement of Foley"* that it concluded had survived the Supreme Court's holding in *Salinas:* "that the transaction sought to be influenced had some connection with a federal program." *Id.* at 93 (citing *Foley,* 73 F.3d at 493). In considering this "requirement"—based on its own prior decision in *Foley* rather than the text of the statute—the Second Circuit reasoned that "[i]ndeed, *Salinas* may be read to indicate that the 'threat .to the integrity and proper operation of [a] federal program' created by the corrupt activity is necessary to assure that the statute is not unconstitutionally applied." *Id.* Applying this "requirement" from *Foley,* the Second Circuit found that because

federal funds were received by Waterbury for housing and urban development programs and the corrupt payments concerned real estate transactions within the purview of the agencies administering federal funds, the requisite connection between the bribes and the integrity of federally funded programs is satisfied.

166 F.3d at 93.

### The Third Circuit Court of Appeals in United States v. Zwick

In *United States v. Zwick,* 199 F.3d 672 (3d Cir.1999), the defendant, an elected member of a township board of commissioners, appealed from his conviction for bribery under § 666(a)(1)(B). *Zwick,* 199 F.3d at 675. Zwick argued that the trial court misinterpreted § 666 when it upheld his conviction without proof of a connection between the solicitation and taking of bribes and federal funds or programs. *Id.* at 675–76.

Before analyzing the issue raised by Zwick on appeal, the Third Circuit reviewed the case law that had developed around § 666.

Prior to the enactment of § 666 in 1984, the limited scope of the federal bribery statute and general theft of property statute hampered the federal government's efforts to reach crimes affecting federal interests due to tracing requirements and limitations on application to non-federal employees. *See* 18 U.S.C. §§ 201, 641. *By its terms, § 666 fills these particular voids; it imposes no title or tracing requirements and covers non-federal employees.*

*Id.* at 679 (emphasis added). With respect to the case law construing § 666 prior to *Salinas,* the court of appeals observed that some courts had been reluctant to uphold convictions under § 666 where there .was no proof of a federal interest in the cor-

rupt act; these courts had reasoned that "interpreting § 666 to have no federal interest requirement would make a federal offense out of routine local bribery, dramatically changing the state-federal balance without an express Congressional directive that it intended to do so." *Id.* at 680. After reviewing the *Salinas* decision, the Third Circuit discussed the post-*Salinas* split in authority that had emerged regarding whether the government must prove, in a prosecution under § 666, that a federal interest was implicated by the corrupt acts. *Id.* at 681–82.

The Third Circuit began its analysis with the statutory language itself and concluded that "[t]he language does not state explicitly that the government must show a connection between the bribe and federal interests." *Id.* at 682. Finding no requirement of such a connection in the plain language of § 666(a)(1)(B), the Third Circuit turned to the statute's *title*—"Theft or bribery concerning programs receiving Federal funds"—finding that the title "implies that a federal connection is anticipated." *Id.* The Third Circuit thus concluded that § 666(a)(1)(B) was ambiguous, presenting two alternative interpretations:

> The most literal interpretation—that the statute lacks a federal connection requirement—is troubling from an interpretative standpoint in that it broadens the range of activity criminalized by the statute and alters the existing balance of federal and state powers by encompassing acts already addressed under state law in which the federal government may have little interest. We cannot embrace such a broad reading of this criminal law unless that is the clear directive from Congress.

*Id.* at 682–83. The *Zwick* court therefore turned to the legislative history for guidance as to Congress's intent and concluded that Congress did not intend "to make

§ 666 applicable when no federal interest is implicated by certain offense conduct." *Id.* at 686. Before reaching its holding "that § 666 requires that the government prove a federal interest is implicated by the defendant's offense conduct," *id.* at 687, the Third Circuit observed that

> [i]nterpreting § 666 to have no federal interest requirement produces serious concerns as to whether Congress exceeded its power under the Spending Clause in enacting this statute. To pass muster under the Spending Clause, legislation regulating behavior of entities receiving federal funds must, among other things, be based upon a federal interest in the particular conduct. Applying § 666 to offense conduct, absent evidence of any federal interest would appear to be an unconstitutional exercise of power under the Spending Clause.

*Id.* at 687 (internal citations omitted). The Third Circuit therefore justified its holding on the grounds that, "when a statute is unclear, we will construe it so as to avoid constitutional concerns, assuming that such construction does not amount to a rewriting of the statute." *Id.*

***The essential elements of the crime defined in § 666(a)(2) do not include proof of a connection between the offense conduct and the expenditure of federal funds.***

The Eighth Circuit Court of Appeals has not addressed whether a prosecution under § 666 requires proof of a connection between the giving or taking of bribes and the federal government's expenditure of funds and, if so, the nature of that connection. Judge Kermit Bye, however, recently considered the *Zwick* and *Santopietro* opinions and found the approach taken by those courts to be "fundamentally flawed." *United States v. Morgan,* 230 F.3d 1067, 1072–73 (8th Cir.2000) (Bye, J., concurring). The Second and Third Circuits

clearly sought to avoid the constitutional problems they perceived with what the Supreme Court had described as § 666's "expansive, unqualified language, both as to the bribes forbidden and the entities covered." *Salinas*, 522 U.S. at 56, 118 S.Ct. 469. Judge Bye described the *Zwick* and *Santopietro* opinions as "reading into" the text of § 666 the requirement of a "connection" not found in the language of the statute itself. *Morgan*, 230 F.3d at 1073. He further observed that the actions of the Second and Third Circuits are contrary to the Supreme Court's repeated admonitions that

> [c]ourts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language. Only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language. This proposition is not altered simply because application of a statute is challenged on constitutional grounds. Statutes should be construed to avoid constitutional questions, but this interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature.

*Id.* (quoting *United States v. Albertini*, 472 U.S. 675, 680, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985) which is quoted in *Salinas*, 522 U.S. at 57, 59–60, 118 S.Ct. 469). Judge Bye's analysis and criticisms of *Zwick* and *Santopietro* are well-founded.

■ The *Salinas* Court admonished that "[n]o rule of construction [...] requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope." *Salinas*, 522 U.S. at 59, 118 S.Ct. 469 (quoting

*United States v. Raynor*, 302 U.S. 540, 552, 58 S.Ct. 353, 82 L.Ed. 413 (1938)). That, however, is precisely what the courts of appeals in *Zwick* and *Santopietro* did. The Third Circuit in *Zwick* focused on the statute's title to find an ambiguity that would justify using § 666's legislative history to fashion a connection requirement for the statute, which is silent in that regard.[6] This approach fails to take into account a long-standing principle of statutory construction that a title cannot control the plain words of the statute.[7] *See* 2A J.G. Sutherland, Statutes and Statutory Construction § 47.03 (1st ed. 1891). The Third Circuit also sidestepped the *Salinas* Court's conclusions that the clause "any business, transaction, or series of transactions" is unambiguous, and the term "any" is without limitation. Furthermore, the court of appeals in *Zwick* did not address the fact that the text of § 666(a)(1)(B) does not mention *programs* of an organization, state, local, or tribal government, or governmental agency *that receive federal funding*. The only limitation on the statute's application, set out in § 666(b), is that the *entity* whose business the bribe was intended to influence must receive more than $10,000 in a year from a federal program. Under *Salinas*, § 666(a)(1)(B) cannot be restricted to bribes tending to influence the "business, transaction, or series of transactions" of programs receiving federal funding. The Third Circuit's reading of § 666(a)(1)(B) strains the plain meaning of the words and excludes from the scope of the statute conduct that clearly falls within it.

The Second Circuit in *Santopietro* derived its "connection" requirement—specif-

---

6. The Supreme Court in *Salinas*, while briefly discussing the historical context surrounding the enactment of § 666, did not rely upon the legislative history to construe the statute.

7. This Court further notes that the Supreme Court, in *Salinas*, did not consider the title of § 666 in construing the statute. It focused solely on the text of § 666(a)(1)(B) and found the relevant language to be unambiguous.

ically, that the transaction to be influenced have some connection with a federal program—from its pre-*Salinas* holding in *United States v. Foley*. The Second Circuit also focused on the fact that the *Salinas* Court had indicated that the offense conduct there, the bribes received by the deputy sheriff from the federal prisoner, had posed a "threat to the integrity and proper operation of a federal program." It thereby avoided the question of

> whether Santopietro's role as mayor—the chief executive officer of the city and hence the officer ultimately responsible for all city departments—would render the statute applicable to corrupt payments received by him *for any transaction involving the city,* even though the federal funds were received for a program entirely unrelated to the program in connection with which the corrupt payments were made.

*Santopietro*, 166 F.3d at 94 n. 3 (emphasis added). This footnote again does not account for the fact that the *Salinas* Court had construed the clause "any business, transaction, or series of transactions" to be unqualified. Indeed, according to the Supreme Court, "[t]he statute applies to *all cases* in which an 'organization, government, or agency' receives [$10,000 or more] of benefits under a federal program." *Salinas*, 522 U.S. at 57, 118 S.Ct. 469 (emphasis added). Section 666(a)(1)(B), as construed by *Salinas*, applied to Mayor Santopietro for bribes tending to influence *any* transaction of City of Waterbury, so long as the city received $10,000 or more of benefits under a federal program. Recognizing that such a reading would present constitutional problems, however, the Second Circuit

read into the statute a "connection" requirement not found in the text itself.

This Court is not persuaded by these two appellate court decisions, which read a "connection" requirement into the essential elements of a charge under § 666. The text of § 666(a)(2) cannot support the existence of a "connection" requirement as one of the elements of the offense without qualifying the word "any" in the phrase "in connection with any business, transaction, or series of transactions"—a phrase the Supreme Court has determined to be unqualified and unambiguous. Therefore, the essential elements the government must prove in order to convict a defendant of giving, offering or agreeing to give a bribe to influence an agent of an organization, government, or governmental agency in violation of § 666(a)(2) are as follows:[8]

1. The defendant offered or gave a thing of value to another person;

2. The thing of value was offered or given in connection with any business, transaction, or series of transactions of an organization, or of a local government, or any agency thereof;

3. The business, transaction, or series of transactions in question involves something valued at $5000 or more;

4. The defendant intended the thing of value to influence or reward an agent of such organization, government, or governmental agency in connection with the business, transaction, or series of transactions in question; and

5. The organization, government, or governmental agency in question received, in any one year period, benefits in excess of $10,000 under a

---

**8.** These elements of the offense are consistent with the proposed jury instructions submitted by the government for use in this case. *See*

*also* Eighth Circuit Model Criminal Jury Instruction 6.18.666B and 6.18.666C (2002)

federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance.

Because § 666(a)(2) does not require the government to prove a connection between the offense conduct and the expenditure of federal funds,[9] the remaining issue is whether the statute, as now construed by this Court, is a constitutional exercise of Congress's powers under the Spending Clause.

## II. The Constitutionality of § 666(a)(2) under the Spending Clause

Federal courts are courts of limited jurisdiction, possessing only such powers as are authorized by the Constitution and by Acts of Congress. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The power of Congress to enact legislation is limited to the enumerated powers found in Article I of the Constitution. *See generally New York v. United States*, 505 U.S. 144, 158–59, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (discussing constitutional limitations on Congress's power to legislate). The Spending Clause in Article I authorizes Congress to spend federal funds "to provide for the general Welfare of the United States." U.S. Const. Art. I, § 8, cl. 1. The government argues that (a) the statute itself, in § 666(b), confers federal jurisdiction for prosecution and (b) Congress has properly enacted § 666 under the Spending Clause.[10]

■ The government argues that § 666(b)—which states that the statute applies whenever an organization, state, local, or tribal government, or governmental agency in question has received at least $10,000 from a federal program—constitutes an "express jurisdictional element" that confers federal court jurisdiction over the offenses described in § 666.[11] *See United States v. Lopez*, 514 U.S. 549, 561, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez*, the Supreme Court considered whether the Gun–Free School Zones Act of 1990 was unconstitutional because it had been enacted outside the scope of Congress's powers under the Commerce Clause. 514 U.S. at 559–67, 115 S.Ct. 1624. In determining the Act's constitutionality, the Court evaluated whether 18 U.S.C. § 922(q) contained a "jurisdictional

9. Therefore, the government's argument in its opposition memorandum that it could establish a connection between the bribes allegedly offered by Sabri and the expenditure of federal funds is irrelevant. The statute does not require proof of such a connection in order for the government to establish that a crime, as defined in § 666, has been committed.

10. The government has not argued that Congress enacted § 666 pursuant to the exercise of legislative power under the Commerce Clause; therefore, this Court will not consider that issue.

11. The government's assertion that § 666(b) limits the statute's applicability to "entities receiving a threshold amount of federal funding and to agents of those entities receiving federal funds," (Gov't Br. at 3–4), seriously mischaracterizes the statute. The criminal provisions of § 666(a) are triggered whenever an organization, or a state, local, or tribal government, or any agency thereof, receives at least $10,000 in federal funds in a year. 18 U.S.C. § 666(b). The statute *applies*, however, *not only to agents* of the entity receiving the funds, 18 U.S.C. § 666(a)(1), *but also, as the Indictment in this case against Sabri demonstrates, to any person offering something of value* with the intent of influencing or rewarding an agent of the entity receiving the federal funds in connection with any business of that entity. 18 U.S.C. § 666(a)(2). Nor does § 666(a)(2) require the agent to be the direct recipient of the bribe; under that provision, it is a crime to offer something of value *to any other person* with the intent of influencing or rewarding an agent of the entity receiving the government's funds.

element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at 561, 115 S.Ct. 1624. The Supreme Court concluded that § 922(q) had "no express jurisdictional element which might limit its reach to a discrete set of firearm possessions *that additionally have an explicit connection with or effect on interstate commerce.*" *Id.* at 562, 115 S.Ct. 1624 (emphasis added).

Similarly, § 666 does not require that the offense conduct (in this case, the giving or offering of bribes) have an effect on the federal funds disbursed to local government. *Salinas,* 522 U.S. at 60–61, 118 S.Ct. 469. There is no statutory element, as established above, that requires proof on a case-by-case basis that the alleged bribery has an explicit connection to any federal funds distributed to the receiving entity. The Third Circuit in *Zwick* correctly pointed out that § 666 "imposes no title or tracing requirements." 199 F.3d at 679. Section 666 is plainly distinguishable from other criminal statutes containing an "express jurisdictional element"; section 666(b) does not directly link a defendant's wrongdoing to the subject over which Congress has power—the expenditure of federal funds. *See generally,* George D. Brown, *Stealth Statute—Corruption, the Spending Power, and the Rise of 18 U.S.C. § 666,* 73 Notre Dame L.Rev. 247, 293–94 (Jan.1998). The Court rejects the government's argument that § 666(b) is an "express jurisdictional element" that limits the statute's reach and constitutes a proper conferral of federal jurisdiction.

■ The government also argues that, under *South Dakota v. Dole,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), § 666 is a valid exercise of legislative power under the Spending Clause because it is merely a "condition" which Congress may attach (incident to its spending power) on

an entity's receipt of federal funds. In *Dole,* the Supreme Court held that Congress could indirectly bring about the establishment of a uniform minimum drinking age among the States by enacting a statute that directed the Secretary of Transportation to withhold a small percentage of federal highway funds from those States allowing the purchase or possession of alcohol by individuals under twenty-one years of age. 483 U.S. at 206, 107 S.Ct. 2793. "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance with federal statutory and administrative directives." *Id.* The *Dole* Court recognized, however, that Congress's power under the Spending Clause is subject to several general restrictions, including limitations that (1) the power must be used in pursuit of the general welfare; (2) Congress must state the condition it is placing on the federal funding unambiguously; (3) the conditions must be related to the federal interest in particular national projects or programs; and (4) the conditions must not violate other independent constitutional restrictions. *Id.* at 207–08, 107 S.Ct. 2793.

This Court finds unpersuasive the government's argument that Congress's enactment of § 666 is justified under the standard announced in *Dole.* As a threshold matter, § 666 is not really a "condition" statute. Congress clearly stated the conditions upon which States could receive all of the available federal highway funds. *See Dole,* 483 U.S. at 208, 107 S.Ct. 2793 (citing 23 U.S.C. § 158). Section 666, however, does not similarly condition a state or local government, or governmental agency's, receipt of federal funds. Section 666 "neither requires a state's compliance with federal regulatory or administrative di-

rectives, nor prevents state action." *United States v. Cantor*, 897 F.Supp. 110, 113 (S.D.N.Y.1995). Furthermore, the statute does not apply to the recipient government or organization; it applies to the "agents" of the recipient *and* private parties.

The Supreme Court has long observed that congressional power under the Spending Clause is similar to the power existing between parties to a contract.

> [L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract."

*Pennhurst*, 451 U.S. at 17, 101 S.Ct. 1531. The government's contention that "[a] local government may easily remove its officers and agents from coverage under 18 U.S.C. § 666 by simply declining any federal aid or only accepting de minimus aid" (Gov't's Br. at 7) would suggest that there is some sort of contractual *quid pro quo* supporting the enactment of § 666 under the Spending Clause. The argument in fact demonstrates that § 666 is an "unbargained-for" intrusion into state criminal jurisdiction.

In *Dole*, South Dakota stood to lose only "5% of the funds otherwise obtainable under specified highway grant programs" if it adhered to a minimum drinking age of nineteen. *Dole*, 483 U.S. at 211, 107 S.Ct. 2793 (emphasis added). Given the small percentage of funds at stake, the *Dole* Court had found the state's arguments that the highway funding statute was "coercive" to be mere rhetoric. *Id.* The "choice" posed by the government here is much more dire. To cut the "string" of § 666, the City of Minneapolis must decide to forego approximately 99.97% of the federal funds [12] it otherwise obtains annually through federal programs.[13] Similarly, the MCDA must decide to forego approximately 99.96 % of the federal funds [14] it otherwise obtains annually through federal programs in order to untangle itself from the "string" of § 666. Thus, even if one could describe the federal funds disbursed to the City of Minneapolis and MCDA as the "financial inducement" by which Congress bargained for federal jurisdiction over offenses traditionally within the purview of state and local governments, that bargain surely is "so coercive as to pass the point at which pressure turns into compulsion." *Dole*, 483 U.S. at 211, 107 S.Ct. 2793.

■ Section 666 plainly is not a "condition" statute within the reasoning of *Dole* and cannot be justified under that decision as a valid exercise of Congress's power under the Spending Clause.[15] Viewing

---

**12.** That percentage represents all but $10,000 of the $28.8 million in federal funding the City received during calendar year 2001. (*See* Indictment ¶ 1.a.)

**13.** Even if the City of Minneapolis or the MCDA made that "simple" decision, such a course of action would not immediately remove anyone from the scope of § 666; the "one year period" for determining whether the statutory minimum amount of federal funds have been received begins no earlier than twelve months before the commission of the offense and extends no later than twelve months after the commission of the offense.

See 18 U.S.C. § 666(d)(5). Thus, long after the federal funds had been cut off, the City and the MCDA could still find both their "agents" and third parties subject to federal criminal prosecution.

**14.** This percentage represents all but $10,000 of the $23 million in federal funds the MCDA allegedly received during calendar year 2001. (*See* Indictment ¶ 1.b.)

**15.** If § 666 were a condition statute, it would not appear to satisfy the relatedness limitation on legislative power under the Spending

§ 666 in light of *Dole* and *Pennhurst,* Judge Bye has observed that

> Congress did not contract with states or local governments. Neither did Congress bestow gifts of funds upon those governments. Rather, Congress passed a federal criminal statute designed to punish conduct that falls within the domain of traditional state concerns (bribery, embezzlement, fraud, etc.). *Section 666 reaches beyond punishment of the state and local governments who receive those funds to proscribe the conduct of third persons who aren't parties to the funding contract.*

*Morgan,* 230 F.3d at 1074 (emphasis added). This Court finds Judge Bye's observations about the Spending Clause shortcomings of § 666 to be germane and persuasive.[16]

"Under our federal system, the states possess primary authority for defining and enforcing the criminal law." *Lopez,* 514 U.S. at 561 n. 3, 115 S.Ct. 1624 (internal quotation marks omitted). The Minnesota Legislature has declared it a felony to give, offer, or promise to give to any public officer or public employee,[17] either directly or indirectly, any benefit, reward, or consideration to which that officer or employee is not legally entitled with the intent of influencing that person's performance of his or her powers or duties. Minn.Stat. § 609.42.[18] The federal punishment of the same conduct under § 666(a)(2) is an intrusion into the state's primary authority and is based solely upon a state or local governmental entity's receipt of a modest amount of federal funds. The following passage, quoted in *Morgan,* has resonance here:

> ... Congress has no more power to punish theft from the beneficiaries of its largesse than it has to punish theft from anyone else. Federal dominion over federal property is irrelevant, because once any particular funds have been given to a recipient, those funds are not federal property anymore. *The Constitution does not contemplate that federal regulatory power should tag along after federal money like a hungry dog.*

*Morgan,* 230 F.3d at 1074 (quoting David E. Engdahl, *The Spending Power,* 44

---

Clause. That limitation requires that the condition Congress imposes on the federal funds must bear some relationship to the purpose of the federal spending. *See New York v. United States,* 505 U.S. 144, 167, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992); *Dole,* 483 U.S. at 207–08, 107 S.Ct. 2793. The government argues that the purpose of § 666 is to protect the "integrity of organizations or agencies that receive federal funds." (Gov't Br. at 4.) Such a connection between the federal spending and the enactment of § 666 is too attenuated since, under that rationale, the government could prosecute a city meat inspector for taking bribes of over $5000 (thereby compromising the integrity of city government) even if the inspector has no contact with or control over funds received by the city from the federal government

16. The Court recognizes that Judge Bye's concurring opinion in *Morgan* is dicta and does not control the issue presented here. It is, however, something more than mere "musings." (See Gov't's Br. at 6 n. 1.)

17. For purposes of Minnesota's bribery statute, a "public officer" is defined to include "a member of the legislature or of a governing board of a county, municipality, or other subdivisions of the state, or other governmental instrumentality within the state." Minn.Stat. § 609.415, subd. 1(1)(b). A "public employee" is defined as "a person employed by or acting for the state or a county, municipality, or other subdivision or governmental instrumentality of the state for the purpose of exercising their respective powers and performing their respective duties, and who is not a public officer." *Id.,* subd. 1(2).

18. The constitutional deficiencies this Memorandum Opinion and Order has discussed with respect to 18 U.S.C. § 666(a)(2) have no application to Minnesota's bribery statute.

Duke L.J. 1, 92 (Oct.1994)) (emphasis added in concurring opinion). Without a requirement that the government prove that the alleged bribery has some connection to the federal funds disbursed by Congress, which this Court has determined is not present in the statute, 18 U.S.C. § 666(a)(2) is an unconstitutional exercise of Congress's power under the Spending Clause. Accordingly, the Indictment here, based solely on § 666(a)(2), must be dismissed.

## Conclusion

Section 666(a)(2) does not require proof by the prosecution of a connection between the offense conduct and the expenditure of federal funds. Section 666 does not contain an "express jurisdictional requirement" that limits the statute's reach to cases in which the alleged bribery has an explicit connection to any federal funds distributed to the receiving entity. Thus, it does not contain a proper conferral of federal jurisdiction, as discussed in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Nor does § 666 impose a "condition" on the grant of federal funds, as discussed in *South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). Therefore, § 666(a)(2) is an unconstitutional exercise of Congress's legislative power under the Spending Clause of Article I of the United States Constitution.

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED** that Defendant Basim Omar Sabri's Motion to Dismiss the Indictment Because 18 U.S.C. § 666 is Unconstitutional (Doc. No. 43) is **GRANTED**. The Indictment (Doc. No. 1) is hereby **DISMISSED**.